# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

UNITED STATES OF AMERICA,    )
                             )
v.                           )          CR425-082
                             )
JEFFERSON FLORES-PADILLA,    )
and SINDI MENCIAS-ESCOBAR,   )
                             )
    Defendants.             )

## ORDER AND REPORT AND RECOMMENDATION

Defendants Jefferson Flores-Padilla and Sindi Mencias-Escobar are each charged, jointly, with one count of receipt of firearms by an illegal alien, in violation of 18 U.S.C. § 922(g)(5), and one count of shipping of firearms by an illegal alien, in violation of 18 U.S.C. § 922(g)(5). *See generally* doc. 1 (Indictment). Mencias-Escobar has moved to dismiss Count 1, as against her, and to exclude statements she made during a custodial interview as involuntary. *See* docs. 34 & 37. She also moves to exclude expert testimony from two witnesses, docs. 35 & 36, joined as to one of those witnesses by Flores-Padilla, doc. 38. The Government opposes all of the motions. Docs. 41, 42 & 43. The Court held a hearing on February 10, 2026, on those motions. Doc. 54.

1

As explained below, the parties' briefing and argument concerning one of the arguments in Mencias-Escobar's Motion to Dismiss Count 1 are insufficient and, therefore, the Court improvidentially took that Motion under advisement after the hearing. The parties will have to supplement their arguments and, if necessary, additional proceedings may be required. That Motion should, therefore, be **DENIED, in part**, and is **DEFERRED, in part**.[1] Doc. 34. For the reasons explained below, Mencias-Escobar's Motion to exclude her statements should be **DENIED**. Doc. 37. Finally, upon further review of the defendants' motions to exclude expert testimony, they are **DEFERRED**, docs. 35, 36 & 38, and the Court will require further argument.

## I.   Motion to Dismiss (Doc. 34)

Mencias-Escobar's first argument in her Motion to Dismiss may be resolved with dispatch. It asserts that the Indictment "fails to allege facts that, if proven, would establish that Mencias-Escobar knowingly

---

[1] The Court will *sua sponte* **STAY** the fourteen-day objections period as to the partial recommendation on the Motion to Dismiss pending further Order from the Court. *See, e.g.,* 28 U.S.C. § 636(b), Fed. R. Civ. P. 72(b). Once the additional proceedings on the second argument are complete, the Court will issue a recommendation concerning the disposition of both arguments for objections from the parties and consideration by the District Judge. This stay does not apply to the recommendation concerning Defendant's Motion to Exclude Involuntary Statements, which shall be submitted to the District Judge, pending the applicable objections period, as provided below.

received or possessed firearms that had been transported in interstate and [sic] foreign commerce." Doc. 34 at 1. She explains that the Indictment alleges that, among other firearms, she received "Glock pistols," doc. 1 at 1, but that "[a] simple Google search" reveals that that manufacturer maintains a facility within the State of Georgia. Doc. 34 at 3. Based on that fact, she contends, "the indictment fails to show the essential element that the 'Glock pistols' have been shipped and transported in interstate or foreign commerce." *Id.* at 4. As the Government points out, that argument does not implicate the sufficiency of the Indictment. *See* doc. 41 at 2.

"In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes," and it may not consider contentions concerning the underlying evidence. *See United States v. Sharp*, 438 F.3d 1257, 1263 (11th Cir. 2006). There is simply no means provided in the Federal Rules of Criminal Procedure for a defendant to challenge the sufficiency of the Government's evidence before trial. *See, e.g., United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992) ("There is no summary judgment procedure in criminal cases.

3

Nor do the rules provide for a pre-trial determination of sufficiency of the evidence."). Mencias-Escobar's arguments attempt to do precisely that. Whether or not the Government will be able to prove the Indictment's allegations at trial, it is clear that it sufficiently alleges the crime charged in Count 1.

"A conviction under 18 U.S.C. § 922(g) has four elements: (1) a status element—here, the defendant knew [she] was an alien unlawfully in the United States; (2) a possession element; (3) a jurisdictional element; and (4) a firearm/ammunition element." *United States v. Atilano*, 101 F.4th 977, 981-82 (8th Cir. 2024) (citing *Rehaif v. United States*, 588 U.S. 225, 139 (2019)). As to the pistols, the Court is not aware of any authority, and Defendant does not point to any, which requires an indictment to allege facts rebutting the possibility that a firearm did not travel in interstate or foreign commerce to adequately allege jurisdiction. The *language* of the Indictment clearly tracks the statute. *Compare* doc. 1 at 1 (alleging that firearms at issue "had been transported in interstate and foreign commerce"), *with* 18 U.S.C. § 922(g)(5) (prohibiting aliens illegally or unlawfully in the United States from "receiv[ing] any firearm or ammunition which has been shipped or transported in interstate or

foreign commerce."). Whether the Government will be able to *prove* that allegation at trial, given the possibility that the pistols at issue were wholly manufactured within and were never transported outside the State of Georgia, is utterly irrelevant to the sufficiency of the Indictment. Mencias-Escobar's Motion to Dismiss Count 1 on that ground should, therefore, be **DENIED, in part**. Doc. 34 at 1.

The parties' briefing concerning Defendant Mencias-Escobar's second argument in her Motion to Dismiss Count 1 is both terse and substantially confused. Mencias-Escobar argues that to the extent that Count 1 alleges that defendants' receipt of "AR-15-style lower receivers," violated § 922(g)(5), it is insufficient because such receivers "are not firearms as defined by law." Doc. 34 at 4. Defendant's brief proceeds to discuss 27 C.F.R. § 478.12(a)(4)(vii), which concerns "AK variant" receivers, *id.*, which the Government's response points out are different from "AR-style" receivers, which are governed by 27 C.F.R. § 478.12(f)(1)(i), doc. 41 at 2-3. The Government asserts, without any further discussion, that because "AR-15-style lower receivers are firearms *under the law*, this argument fails." *Id.* at 3 (emphasis added).

The Government's inference, however, is fallacious. The *regulation* is simply not transparently equivalent to *the law*.

Appreciating the insufficiency of the Government's argument here requires a brief precis of the byzantine structure of federal firearms regulation. First, § 922(g)(5) makes it unlawful for any alien illegally or unlawfully in the United States to ship, transport, or receive "any firearm." *Id.* "Firearm," is defined in 18 U.S.C. § 921(a)(3) as "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive," or "the frame or receiver of any such weapon." 18 U.S.C. § 921(3)(A)-(B). However, "[t]he statute does not itself define 'frame or receiver.'" *United States v. Rowold*, 429 F. Supp. 3d 469, 473 (N.D. Ohio 2019). "In the absence of a statutory definition, the ATF crafted [27 C.F.R.] § 478.11 to elucidate what a receiver is." *Id.* at 475. However, "[i]n . . . 2022 . . ., ATF sought to expand this definition," and promulgated 27 C.F.R. § 478.12, which was incorporated into 27 C.F.R. § 478.11 by reference. *Bondi v. VanDerStock*, 604 U.S. 458, 465 (2025); *see also* 27 C.F.R. § 478.11 ("The term 'frame or receiver' shall have the same meaning as in § 478.12.").

There is some authority, albeit no biding authority, that an "AR-15-style receiver" was not a "frame or receiver," and, thus, not a "firearm," as defined under the pre-2022 regulatory regime. *See Rowland*, 429 F. Supp. 3d at 476-77; *see also VanDerStok v. Garland*, 86 F.4th 179, 184 (5th Cir. 2023) (noting, in *dicta*, that "the lower assembly of the AR-15, taken alone, is likely not covered by federal regulations."), *reversed and remanded by VanDerStok*, 604 U.S. 458; *see also United States v. Burning Breast*, 8 F.4th 808, 816-17 (8th Cir. 2021) (Kobes, J. dissenting) (concluding "an AR-15 lower receiver is not a 'firearm'"). The fact that the 2022 regulations "expanded" the definition makes the Government's contention that they include AR-15-style lower receivers—despite the authority that the prior regulations did not—plausible but hardly compelling. Moreover, in *VanDerStok*, the Supreme Court expressly declined to resolve "whether ATF's new regulations in § 478.11 and § 478.12 may be lawfully applied to . . . unfinished frames or receivers." 604 U.S. at 467. It held that "[t]he [Gun Control Act ("GCA")] embraces, and thus permits ATF to regulate, *some* . . . unfinished frames or receivers, including those we have discussed," *id.* at 484 (emphasis added)), but not *which,* much less whether the "expanded" regulatory

definitions comport with the governing statutes in every instance. *Cf. VanDerStok*, 86 F.4th at 190 ("[T]he . . . portion of the Final Rule that redefines 'frame or receiver' to include partially complete, disassembled, or nonfunctional frames or receivers constitutes unlawful agency action."); *see also id.* at 189 (finding that "ATF's previous understanding[, as expressed in the pre-2022 version of 27 C.F.R. § 478.11,] of 'frame or receiver' closely tracked the public's common understanding of such terms at the time of [the Gun Control Act's] enactment."); *see also VanDerStok*, 604 U.S. at 490-92 (Thomas, J. dissenting) (critically discussing the expansion of the regulation's definition of "frame or receiver"). *VanDerStok*'s holding that "*some* . . . unfinished frames or receivers," are properly considered "firearms" within the meaning of the statue, does little, if anything, to clarify whether the particular "AR-15-style lower receivers" at issue in Count 1 are. The Court, therefore, improvidentially relied upon the parties' presentations when it took that portion of the Motion to Dismiss under advisement.

Given the state of the law after *VanDerStock*, the Court is unable to conclude whether the allegation that Mencias-Escobar received and possessed "multiple AR-15-style lower receivers," even if proved at trial,

8

would constitute a violation of § 922(g)(5).  As noted above, the parties' presentations, other than identifying the issue, do nothing to resolve it. Defendant's Motion relies on a facially inapplicable portion of the regulation.  The Government's response, by pointing to the regulation and ignoring the substantial dispute and doubt concerning its legitimacy and application, simply begs the question.  However, given the challenge to the legal sufficiency of the disputed portion of Count 1, the Court must resolve the question.  It will not do so alone.  No later than February 24, 2026, therefore, Defendant Mencias-Escobar is **DIRECTED** to file a supplemental brief addressing: (1) whether 27 C.F.R. §§ 478.11 & 478.12's definition of "frame and receiver" comports with the limits of those terms as used in 18 U.S.C. § 921(a)(3)(B); (2) if not, what the proper scope of the statute's reference to "frame or receiver" is; and (3) regardless of which definition of "frame or receiver" Defendant contends is appropriate, whether "AR-15_style lower receivers," are a "frame or receiver" within the meaning of § 921(a)(3)(B).[2]  The Government is

---

[2] The Court notes that whether the "AR-15-style lower receivers" are "firearms," as a matter of law, implicates the allegations against Defendant Flores-Padilla as well as Defendant Mencias-Escobar.  However, Flores-Padilla has not joined in Mencias-Escobar's Motion to Dismiss. *See generally* docket.  To the extent that Flores-Padilla wishes to be heard now on whether those allegations against him are proper, he is

**DIRECTED** to file any response to Defendant's supplemental brief by no later than March 3, 2026.[3]  In making their respective arguments on those questions, it perhaps goes without saying that the parties will need to *expressly* address how the Supreme Court's reasoning in *VanDerStok*, involving a factually and procedurally different context, applies to the questions the Court must resolve here.  Once both parties' briefs have been received, the Court will consider whether a hearing is necessary.

## II.    Motion to Suppress (Doc. 37)

As the Supreme Court has explained, "[i]t is . . . axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession

---

free to submit a brief within the deadline imposed for Mencias-Escobar.  However, any such brief should address his failure to file a motion timely.  *See* Fed. R. Crim. P. 12(c)(3). The Government should respond to Flores-Padilla's filing within its deadline to respond to Mencias-Escobar's, including any assertion that the Court should disregard his filing as untimely.

[3]  The Court notes, finally, that even if the lower receivers were found not to be "firearms," as a matter of law, it is not clear that dismissal of Count 1 would be required.  As discussed above, the allegation that Defendants "receive[d] and possess[ed]," Glock pistols and the lower receivers.  Doc. 1 at 1.  It is possible, therefore, that Count 1 would remain valid even if the allegation concerning the lower receivers were legally defective.  Since the Government's response does not attempt to parse Count 1's allegations, *see generally* doc. 41, the Court will not attempt to do so in the first instance.  The Government remains free, however, to argue that notwithstanding the questions about the proper statutory treatment of the lower receivers, some remedy short of dismissal of Count 1 is more appropriate.

. . . ." *Jackson v. Denno*, 378 U.S. 368, 376 (1964) (citation omitted).[4]

Courts "focus [the] voluntariness inquiry on whether the defendant was coerced by the government into making the statement:    The relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice, rather than intimidation, coercion or deception." *United States v. Thompson*, 422 F.3d 1285, 1295 (11th Cir. 2005) (internal citation and quotations omitted).    Although voluntariness depends upon the totality of the circumstances, "[a]bsent police conduct causally related to the confession, there is no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Id.* at 1296 (quoting *Colorado v. Connelly*, 479 U.S. 157, 164 (1986)) (internal quotation marks and alterations omitted).    "Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession." *Id.* (internal quotation marks and citation omitted).    The Government bears the burden of showing, by a

---

[4] There is no dispute that Defendant was under arrest, and therefore, "in custody" when she made the statements and that her *Miranda* rights were explained to her. *See, e.g.,* doc. 37 at 1.

11

preponderance of the evidence, that a defendant's in-custody statements were voluntary. *Missouri v. Seibert,* 542 U.S. 600, 608 n. 1 (2004) (citing *Lego v. Twomey,* 404 U.S. 477, 489 (1972)); *Connelly,* 479 U.S. at 168.

Defendant argues that "[a]gents made several statements during the interview that render her statements involuntary." Doc. 37 at 1. First, she points to statements that agents made concerning criminal penalties for lying to federal law enforcement. *Id.* Second, she points to statements that her cooperation would result in quicker reunion with her minor children. *Id.* at 1-2. Third, she points to statements that her cooperation "would help," her. *Id.* at 2. Finally, she points to statements suggesting that she and various members of her family, including one of her minor children, could be deported. *Id.* At the hearing, the Court heard testimony from Homeland Security Special Agent Miguel Presno. *See* doc. 54 at 1. Presno's testimony substantially confirmed the information in a transcript of the interview submitted as an attachment to Defendant's Motion. *See* doc. 37-1. He testified that, during the interview, agents were not physically menacing, *i.e.* they were not looming over her, no firearms were present, and the tone of the interview was not particularly confrontational. He also testified that, in his

12

estimation, Mencias-Escobar was not even intimidated, much less coerced, because she appeared to "smirk" several times during the interview. Other than the fact of the statements discussed below, Mencias-Escobar has not pointed to any aspect of the interview that was particularly intimidating or coercive. Since none of the statements that Defendant refers to are sufficiently coercive to render her statements involuntary, her Motion should be **DENIED**. Doc. 37.

First, statements by law enforcement encouraging suspects in custody to tell the truth and reminding them of the penalties for failing to do so are not, without more, coercive. "[T]elling [an in-custody suspect] in a noncoercive manner of the realistically expected penalties and encouraging her to tell the truth is no more than affording her the chance to make an informed decision with respect to her cooperation with the government." *United States v. Ballard*, 586 F.2d 1060, 1063 (5th Cir. 1978);[5] *see also United States v. Hipp*, 644 F. App'x 943, 947 (11th Cir. 2016) (citing *United States v. Vera*, 701 F.2d 1349, 1364 (11th Cir. 1983)) ("A mere admonition to the accused to tell the truth does not render a

---

[5] The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

statement involuntary."). Similarly, vague statements that cooperation may be beneficial to a defendant do not render subsequent statements involuntary. *See, e.g., Hipp*, 644 F. App'x at 947 (citing *United States v. Nash*, 910 F.2d 749, 753 (11th Cir. 1990)) ("[A] general statement that cooperation may be beneficial to an accused, with no promise of leniency, does not amount to an illegal inducement."). Although the statements about Mencias-Escobar's children are not so obvious, the Court concludes that, under the totality of the circumstances, they did not render her statements involuntary. *See, e.g., United States v. Brewer*, 2009 WL 29655, at \*12 (N.D. Iowa Jan. 5, 2009) (discussing effect of references to children's custody on voluntariness of defendant's statements). Finally, references to a defendant's immigration status, without more, are generally considered "advising a suspect about potential penalties that [she] faces," and not sufficiently coercive to render statements involuntary. *United States v. Crawford*, 2019 WL 7559737, at \*4 (N.D. Ga. Sept. 24, 2019) (citing *Nash*, 910 F.2d at 753), *recommendation adopted, in relevant part, by* 2019 WL 5800271, at \*3 (N.D. Ga. Nov. 7, 2019); *see also United States v. Khoa Dang Hoang*, 737 F. App'x 136, 139 (4th Cir. 2018); *United States v. Amilcar*, 2025 WL 2452415, at \*9

14

(E.D.N.Y. Aug. 25, 2025). Given the Government's evidence that there were no particularly coercive circumstances in the interview, and no indications that Defendant felt particularly threatened, the Court concludes that notwithstanding the identified statements, the Government has borne its burden to show, by a preponderance of the evidence, that they were voluntarily made. Defendant's Motion to Suppress them should, therefore, be **DENIED**. Doc. 37.

### III.    Motions to Exclude (Docs. 35, 36 & 38)

Finally, the Court addresses both defendants' motions to exclude two Government experts for its alleged failure to timely comply with its disclosure obligations under Federal Rule of Criminal Procedure 16(a)(1)(G). *See* docs. 35, 36 & 38. Based on the parties' presentations and statements at the February 10 hearing, it remains unclear to the Court whether the Government's disclosures are, currently, insufficient under Rule 16(a)(1)(G) or whether, although provided piecemeal, they have been rendered compliant. The distinction, and defendants' potential disregard of their meet-and-confer obligations, *see* S.D. Ga. LR Crim. 16E(a), makes a difference. Although the Court is empowered to prohibit a noncompliant party from introducing undisclosed evidence, *see*

15

Fed. R. Crim. P. 16(d)(2)(C), imposition of sanctions is discretionary, and prejudice is relevant to the exercise of that discretion. *See United States v. Petrie*, 302 F.3d 1280, 1289 (11th Cir. 2002). In the absence of any sufficient indication of whether and to what extent either defendant has suffered any prejudice from the Government's disclosure, the Court cannot rule on any of the motions. Given that the Court will require further briefing on the question of whether the "AR-15-style lower receivers" implicated in Count 1 are "firearms" within the meaning of § 922(g)(5), it will require supplementation concerning these motions on the same schedule.

Accordingly, Defendants are **DIRECTED** to supplement their respective motions seeking to exclude the Government's expert witnesses by no later than February 24, 2026 to answer the following questions: (1) whether the Government's disclosures, considered *in toto*, comply with the requirements of Rule 16(a)(1)(G); (2) if the disclosures are now sufficient, when did the Government's partial disclosures collectively satisfy the Rule's requirements; (3) whether the disclosures are now sufficient or not, what prejudice does either defendant contend has occurred or will occur as a result of the specific deficiencies; and (4)

whether either defendant contends that any remedy, under Rule 16(d)(2), short of exclusion would address the prejudice identified under Question (3). The Government is **DIRECTED** to respond to any supplemental briefing by no later than March 3, 2026. Upon receipt of the parties' supplemental briefing, the Court will determine whether a hearing on the motions is necessary.

## IV. Conclusion

Defendant Mencias-Escobar's Motion to Suppress Involuntary Statements should be **DENIED**. Doc. 37. This R&R is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to the R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of

rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

Defendant Mencias-Escobar's Motion to Dismiss should be **DENIED, in part**. Doc. 34. The Court **DEFERS, in part**, any recommendation on the argument concerning whether "AR-15-style lower receivers" are "firearms" within the meaning of 18 U.S.C. § 922(g)(5). Doc. 34. Any parties' deadline to object to the recommendation concerning the denial of her argument concerning whether the "Glock pistols" traveled in interstate commerce is **STAYED** pending further Order from the Court. The parties are **DIRECTED** to submit further briefing on the deferred issue as required above. Finally, the Court **DEFERS** ruling on Defendants' respective motions to exclude the Government's expert witnesses, pending the additional briefing discussed above. Docs. 35, 36 & 38.

Finally, the Court finds that the ends of justice served by affording the parties an opportunity to refine their arguments on theses issues, as discussed above, outweigh the best interests of the Defendants and the public in a speedy trial. Failure to afford them such an opportunity would

18

deny counsel for Defendants and the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence. *See* 18 U.S.C. § 3161(h)(7)(B)(iv). The additional time from the date of Defendant's filing her Motion to Dismiss, doc. 34, up to and including the District Judge's final disposition of that Motion, shall be excluded from the calculation of any period of time within which the trial of this action must commence pursuant to the Speedy Trial Act.

**SO ORDERED and REPORTED AND RECOMMENDED,** this 17th day of February, 2026.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA